**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

BEAVER COAL COMPANY, LIMITED,

        Plaintiff,

v.                                        CIVIL ACTION NO. 5:08-cv-00244

CABOT OIL & GAS CORPORATION and
CRANBERRY PIPELINE CORPORATION,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Defendants' Motion to Dismiss [Docket 4] and Plaintiff's Motion to Remand [Docket 8]. These matters have been fully briefed and are ripe for adjudication.

*I. BACKGROUND*

This action arises out of a seven-count complaint filed in the Circuit Court of Raleigh County, West Virginia, by Plaintiff, Beaver Coal Company, Limited, against Defendants, Cabot Oil and Gas Corporation (Cabot) and Cranberry Pipeline Corporation (Cranberry) regarding alleged breaches of two agreements entered into by Plaintiff and Cabot: A lease entered on April 10, 1929, (the 1929 Lease)[1] and a license entered on February 1, 1977 (the 1977 License).

Plaintiff asserts that Cabot assigned its rights under the 1929 Lease and its right to operate a gas pipeline under the 1977 License to Cranberry on April 4, 1983, allegedly in violation of both agreements. As part of this action, Plaintiff seeks damages for losses it has incurred as a result of

---

[1] The lease was amended in 1956 and 1978.

the assignment, damages for Cranberry's trespass, ejectment of Cranberry, and a declaratory judgment for forfeiture of the 1977 Licence. Plaintiff also asserts claims against Cabot regarding certain disputes over royalties.

On May 5, 2009, Plaintiff filed a motion to remand on the basis that the Court lacks jurisdiction for want of diversity. There appears to be no dispute that Plaintiff is a Pennsylvania corporation with its principal place of business in West Virginia and that Cabot is a Delaware Corporation with its principal place of business in Texas. In addition, it is undisputed that Cranberry is incorporated in Delaware. Therefore, the only point of contention is whether Cranberry's principal place of business is in West Virginia or Texas.[2] If Cranberry's principal place of business is West Virginia, then diversity is lacking and remand is necessary.

## II. STANDARD OF REVIEW

"The burden of establishing federal jurisdiction is placed upon the party seeking removal." *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). Accordingly, in this case, Defendants have the burden to show the existence of federal jurisdiction by a preponderance of the evidence. *Johnson v. Nutrex Research, Inc*., 429 F. Supp. 2d 723, 726 (D. Md. 2006) (citing *Schwenk v. Cobra Mfg. Co.*, 322 F. Supp. 2d 676, 678 (E.D. Va. 2004)). "Because federal courts are courts of limited jurisdiction, removal statutes must be construed strictly against removal." *McCallister v. Purdue Pharma L.P.*, 164 F. Supp. 2d 783, 788 (S.D. W. Va. 2001). Thus, in ruling on a motion to remand, the Court "should resolve all doubts, concerning the validity of a removed civil action, in favor of remand." *Thorne v. WLR Foods, Inc.*, 111 F.Supp.2d 744, 745 (N.D. W. Va.

---

[2] Defendants assert that Plaintiff argues that the amount in controversy has not been proven to exceed $75,000. However, Plaintiff's motion does not make such allegation.

2000) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 312 U.S. 100, 108 (1941); *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 425 (4th Cir. 1999)).

### *III.  REMOVAL JURISDICTION*

Congress has given parties the right to remove a case from state to federal court under 28 U.S.C. § 1441.  That statute states, in relevant part:

> [A]ny civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).

Article III of the United States Constitution provides, in pertinent part, that "the judicial Power shall extend to Cases . . . arising under . . . the Laws of the United States . . . ; [and] to Controversies . . . between Citizens of different States."  Similarly, Congress provides that original federal jurisdiction may be based on either federal question jurisdiction, 28 U.S.C. § 1331 (1988), and diversity-of-citizenship jurisdiction, 28 U.S.C. § 1332 (1988).  Because the Defendants do not allege federal question jurisdiction, the Court will examine whether diversity jurisdiction is present.

Congress has authorized the federal courts to exercise diversity jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states."  28 U.S.C. § 1332(a)(1).  A case is between citizens of different states when "there is complete diversity between all named plaintiffs and all named defendants, and no defendant is a citizen of the forum State."  *Lincoln Prop. Co. V. Roche*, 546 U.S. 81, 84 (2005).  It is well established that when determining if complete diversity exists, "a corporation is deemed 'to be a citizen of any State by which it has been incorporated and of the State

where it has its principal place of business.'" *Columbia Gas Transmission Corp. v. Burdette Realty Imp., Inc.*, 102 F.Supp.2d 673, 675 (S.D. W. Va. 2000) (citing 28 U.S.C. § 1332(c)(1)).

    *A.     Applicable Test*

To determine where a corporation has its principal place of business, the Court of Appeals for the Fourth Circuit has recognized two tests: the "nerve center" and "place of operations" tests. *Peterson v. Cooley*, 142 F.3d 181, 184 (4th Cir. 1998). The "nerve center" analysis applies when a corporation engages primarily in the ownership and management of geographically diverse investment assets. *Athena Auto., Inc. v. DiGregorio*, 166 F.3d 288, 290 (4th Cir. 1999). It is "better suited when there is no clear center . . . of corporate business activity." *Mitchell v. Monongahela Power Co.,* 602 F.Supp. 756, 758 (S.D. W. Va. 1985) (Haden, C.J.). On the other hand, the "place of operations" test "looks to the place where the bulk of corporate activity takes place." *Mullins v. Beatrice Pocahontas Co.*, 489 F.2d 260, 262 (4th Cir. 1974). This standard "follows the statute's legislative history, which indicates emphasis should be placed on the locus of operations rather than where the policymaking functions are carried out." *Grimm v. Plasma Processing Corp.*, 888 F.Supp. 56, 58 (S.D. W. Va. 1995) (Haden, C.J.).

Defendants argue that a third option, the "total activity" test, which is a hybrid of the "nerve center" and "place of operations" tests, is most appropriate in this case. Under the "total activity" analysis, the court considers all the circumstances surrounding a corporation's business in order to discern its principal place of business in light of the particular circumstances of a corporation's organization. *Harris v. Black Clawson Co.*, 961 F.2d 547, 549 (5th Cir. 1992).

Defendants cite to *Moore v. Cabot Oil & Gas Corp.*, 2:06-cv-0538, 2007 WL 1302546 (S.D. W. Va. May 2, 2007) (Copenhaver, J.), which they claim adopted the Fifth Circuit's "total activities"

test. However, Defendants' statement is incorrect. The court in *Moore* merely adopted a three-prong approach developed by the Fifth Circuit to determine whether to apply the "nerve center" or "place of operations" tests to a particular case.[3]

Also, Defendants claim that "on more than one occassion, the Fourth Circuit has 'hinted' that a district court should apply the 'total activity' test." (Docket 14 at 7.) In support of their contention, Defendants cite to *Nutter v. New Rents, Inc.*, 945 F.2d 398, 1991 WL 193490, at *3 (4th Cir. Oct. 1, 1991) (unpublished table opinion), which states

> While intimating no view as to which of these positions ["nerve center" or "place of operations" tests] this court will ultimately adopt, we suggest that, whichever line of authority the district court finds more convincing, it could advance the ultimate disposition of this question considerably by making findings of fact which are material to both theories.

Instead of "hinting" that the district court should apply the "total activity" test, this quote would be more accurately read to suggest that the Fourth Circuit had not decided which of the *two* possible

---

[3] The three-prong approach, which is similar to the guidance provided by other cases in the Fourth Circuit, states the following:

> [N]either the "nerve center" nor the "place of activity" test inflexibly dictates the corporation's principal place of business. Rather the tests simply stand for general rules regarding the determination of a particular corporation's principal place of business: [1] the principal place of business of a far-flung corporation will generally be its nerve center, [2] the principal place of business of a corporation with significant administrative authority and activity in one state and lesser executive offices but principal operations in another state is generally the district of the former, and [3] the principal place of business of a corporation with its corporate headquarters in one state and its single activity in another will generally be in the state of its operations. These rules, however, are applied on a case-by-case analysis, weighing the particular facts. The two tests are therefore not mutually exclusive but rather complementary.

*Moore*, 2007 WL 1302546 at *4 (quoting *J.A. Olson Co. v. City of Winona*, 818 F.2d 401, 409-410 (5th Cir. 1987) (citations omitted)).

tests it would apply and was directing the district court in that specific case to make findings under the two recognized theories. However, the Fourth Circuit did not suggest that it would combine the two to create a hybrid test. Furthermore, ten years after the *Nutter* decision, the Fourth Circuit stated again that there are two tests for determining a corporation's principal place of business. *See Long v. Silver*, 248 F.3d 309, 315 (4th Cir. 2001).[4] Notably, the court did not mention a third test.

Therefore, it is clear that the Fourth Circuit endorses two tests for ascertaining a corporation's principal place of business for jurisdictional purposes: the "nerve center" and "place of operations" tests. Moreover, Defendants have neither cited, nor has the Court found, a single case from the Fourth Circuit Court of Appeals or a district court within the Fourth Circuit that has applied the "total activities" test. In light of the apparently settled law in the Fourth Circuit, the Court declines the invitation to blaze a trial by attempting to add a third test plucked from thin air.

In addition, the application of the nerve center test would be inappropriate in this case. *See Grimm*, 888 F.Supp. at 58 (holding that the defendant, who had a processing plant in West Virginia and its corporate headquarters in Tennessee, was not a diversified or far-flung operation, and, therefore, the application of the "nerve center" test was inappropriate). Cranberry does not engage in the ownership and management of geographically diverse investment assets, and it has a clear center of corporate activity. In fact, all of Cranberry's physical assets appear to be in West Virginia.

---

[4] Defendants also claim that *Long* stands for the proposition that the Fourth Circuit has "hinted" that a district court should apply the total activities test. However, *Long* makes no such a suggestion. *Long* specifically states, "two divergent approaches exist for purposes of ascertaining the 'principal place of business' of a corporation under § 1332(c)." 248 F.3d at 314. The court in *Long* found it unnecessary to decide which test it would apply under the facts of that case because both approaches yielded the same result. *Id.* However, the court did not imply that by declining to choose which test to apply under the circumstances of that case that it was adopting a hybrid analysis.

Thus, the Court will determine where Cranberry's principal place of business is under the "place of operations" test.

### B.     *Analysis under Place of Operations Test*

In applying the "place of operations" test, the Court must determine "where the corporation would be most visible, would have the most contact with the public, and where the corporation would consider its home, although . . . no one fact [controls]."  *Mitchell*, 602 F. Supp. at 758.

Under the "place of operations" test, it is clear that Cranberry's principal place of business is located in West Virginia.  Defendants admit, "Cranberry is in the business of transporting natural gas in the State of West Virginia in pipelines that connect with intrastate pipelines." (Docket 14 at 9.)  They also admit that Cranberry's "day-to-day operations with respect to routine field maintenance and repair of the pipelines and compressor facilities takes place in West Virginia." (*Id.*)  Defendants also state that the field personnel who perform work on Cranberry's pipeline are located in West Virginia.  (*Id.* at 10.)  In addition, Defendants do not dispute Plaintiff's assertions that Cranberry's physical assets are in West Virginia.  (*See* Docket 9 at 2.)  Moreover, in another action, Defendants admitted that they "concede[d] that if the place of operations test [was] used, focusing upon the physical pipeline assets of Cranberry, that complete diversity of citizenship [did] not exist between [them and the plaintiff, who was a West Virginia corporation]."  *Branch Banking and Trust Co. v. Cabot Oil & Gas Corp.*, Civil Action No. 2:02-cv-0049 (S.D. W. Va. 2002) (Docket 1 at 2–3 n.1).

Because the facts overwhelmingly show that Cranberry's principal place of business is in West Virginia, it is a citizen of West Virginia for purposes of diversity jurisdiction.  Therefore,

because the parties are not diverse, the Court lacks jurisdiction, and accordingly, Plaintiff's motion to remand is **GRANTED**.

## *IV. COSTS*

Plaintiff also asserts that it should be awarded costs in this case. "An order remanding [a] case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140 (2005). "[T]he standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Id.* at 141.[5]

Plaintiff argues that Defendants' removal was unreasonable for two reasons. First, Defendants had admitted in a previous motion that "[c]ounsel is aware that the current state of the law in the United States District Court for the Southern District of West Virginia, relies upon and adopts [sic] the 'operations test.'" (Docket 15 at 8) (citing *Branch Banking and Trust Co. v. Cabot Oil & Gas Corp.*, Civil Action No. 2:02-cv-0049 (S.D. W. Va. 2002) (Docket 1 at 2–3 n.1)).

---

[5] Unlike Rule 11, which requires "a finding of counsel's bad faith as a precondition to the imposition of fees," *Brubaker v. City of Richmond*, 943 F.2d 1363, 1382 n.25 (4th Cir. 1991), an award of costs may be made under § 1447(c) regardless of whether removal was in bad faith, *In re Lowe*, 102 F.3d 731, 733 n.2 (4th Cir. 1996).

Furthermore, Plaintiff argues that in that same motion, Defendants admitted that under the "place of operations" test, Cranberry is a citizen of West Virginia. *Id.* Second, Plaintiff asserts that "[r]ather than arguing for a change in the law, Defendants have taken the unsupported position that the law is unsettled." (Docket 15 at 9.) However, Defendants claim that "they removed the case believing that the case law of the Southern District of West Virginia supported diversity jurisdiction as . . . Cranberry's 'principal place of business' is in Texas and not West Virginia." (Docket 14 at 14.)

Though the "nerve center" and "place of operations" tests are the only approaches adopted by courts in the Southern District of West Virginia, it is plausible that Defendants could have misinterpreted *Moore* to adopt a third approach. As discussed above, *Moore* cited to *J.A. Olson Co.* to "address[] the relationship between the two tests [the "place of operations" and "nerve center" tests]." *Moore*, 2007 WL 1302546 at *3 (citing *J.A. Olson Co.*, 818 F.2d at 409-10). *J.A. Olson Co.* is a Fifth Circuit case in which the court applied the "total activity" test. Though *Moore* did not adopt the "total activity" test by citing to *J.A. Olson Co.*, Defendants' belief –albeit mistaken– that it did is an objectively reasonable basis for seeking removal. In addition, *Moore* was decided on May 2, 2007, which was after Defendant's admission that the "place of operations" test is the analysis followed in the Southern District of West Virginia. Therefore, Defendants may have believed that the law in the Southern District of West Virginia had changed.[6] Accordingly,

---

[6] The Court notes that Defendants' claim that "on more than one occasion, the Fourth Circuit has 'hinted' that a district court should apply the 'total activity' test," (Docket 14 at 7), misrepresents the law in the Fourth Circuit; however, that misrepresentation does not negate the fact that Defendants had an objectively reasonable basis for seeking removal.

9

Plaintiff's request for costs and expenses, including attorney fees, incurred as a result of removal, is **DENIED**.

### V. CONCLUSION

For the reasons stated above, Plaintiff's Motion to Remand [Docket 8] is **GRANTED**, and Plaintiff's request for costs and expenses, including attorney fees, incurred as a result of removal is **DENIED**. The Court **REMANDS** this case to the Circuit Court of Raleigh County for further proceedings.[7]

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record, any unrepresented party, and the Clerk of the Circuit Court of Raleigh County.

ENTER: February 18, 2009

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

---

[7] Because this Court finds that it lacks jurisdiction, it must leave Defendants' Motion to Dismiss [Docket 4] for resolution by the state court following remand.